JUAN SERRANO, Plaintiff and Appellant, *v.* NARCISO LÓPEZ, Defendant and Appellee.

No. 11708. Argued January 15, 1957.—Decided May 31, 1957.

924

*Ramón Ferrer Delgado* for appellant. *José M. Terrasa* for appellee.

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

On October 18, 1953, while plaintiff was passing by a farm owned by Miguel Morales in Barrio Garrochales of Arecibo, he saw a child within the farm whom a cow was trying to gore. He immediately jumped over the wire fence which was the boundary line between the property and the road, in order to help the child defend itself, and struck the animal with a stick. It turned and attacked the plaintiff, fracturing the tibia and the fibula of his right leg, and also causing contusions in different parts of his body. Invoking the provisions of § 1805 of the Civil Code (1930 ed.) [1]

---

[1] Said section provides that: "The possessor of an animal, or the one who uses the same, is liable for the damages it may cause, even when said animal should escape from him or stray.

"This liability shall cease only in case the damage should arise from *force majeure* or from the fault of the person who may have suffered it." 31 L.P.R.A. § 5144.

and alleging that Narciso López was the owner of the animal, the plaintiff filed an action for damages. The complaint was dismissed by the lower court, in brief, on the following ground: "The evidence clearly established that although it is true that on the day of the accident (October 18, 1953), the defendant Narciso López was the owner of the cow, yet he was not in possession of the animal at the time, because he had delivered it to Amado Morales to go shares, and the defendant was not making any use of the animal on the day of the accident."

It is urged here: *first*, that Narciso López and Amado Morales were co-owners of the animal in question; *second*, that the defendant Narciso López was using it at the time of the accident; and *third*, that said defendant is liable for the damages inflicted on the plaintiff pursuant to the provisions of the aforecited § 1805, for there was no *force majeure* or fault on the part of the victim. After analyzing the facts which appear in the record and the applicable rules of law, we are convinced that these arguments lack merit and that the judgment from which this appeal was taken should be affirmed.

In effect, as established by the evidence introduced at the trial, two years prior to the occurrence here the defendant delivered to Amado Morales the cow which caused the damages, on the basis of "sharing profits," that is to say, by virtue of the following contract: (1) the defendant Narciso López retained the ownership of the animal; (2) Amado Morales assumed the exclusive obligation of caring, keeping, and feeding the animal; (3) the profits (to wit, the proceeds from the sale of the cow, comparing its price with its value at the time of delivery) would be divided share and share alike between the contracting parties, dividing also between them the price of the calves but not the milk which was kept by Amado Morales; and (4) the party working on shares held possession of and the exclusive right to use the animal while the contract was in force.

926

This was, therefore, a typical contract for the breeding of cattle on shares which is in many respects analogous to a lease contract and a partnership contract but which constitutes *sui generis* a special contract. 4 Castán, *Derecho Civil Español*, 594–622 (8th ed. 1956); *Diccionario de Derecho Privado*, 402–406 (1950); 10 Planiol y Ripert, *Tratado Práctico de Derecho Civil Francés*, 928–942 (Sp. trans.) 1940.[2] Thus at the time of the accident, Amado Morales had the legal possession of the animal which caused the damages and he was the only one who used it, according to the terms of the aforesaid contract of *aparcería* with the defendant owner. Undoubtedly Amado Morales was the only person responsible for taking care of the animal and had the right to use it as it was most convenient to him, without being bound to receive or to obey orders from the owner in that respect.

This suffices to render inapplicable to the case at bar the special liability which our Civil Code imposes on the posses-

---

[2] See, also, 10 Planiol y Ripert, *Traité Pratique de Droit Civil Francais* 1032–1044 (2d ed. 1956). Our Civil Code refers to leases for partnership of breeding cattle in § 1469, for the sole purpose of providing that they shall be governed by the provisions relating to articles of co-partnership and by the agreements of the contracting parties, and, in their absence, by the customs of the country. See *Aragundo v. Ramos*, 33 P.R.R. 91 (1924). As Castán observes, *op. cit.* 603–604, the solution of the Code in qualifying the contract of *aparcería* and in subjecting it, on the other hand, to the provisions relating to a partnership contract, is illogical. Therefore "it is necessary to give this text a broad interpretation, it being understood that the structure of the *aparcería* . . . is inspired in mixed and intermediate notions" and besides "since the Code does not give us a picture of the institution, nor even of its concept, perhaps because it believes that it belongs to the common law rather than to the statute law, and that its contents and physiognomy may be very changeable, we can very well admit that it leaves to the will of the contracting parties or to the customs of the country the determination of the measure or predominance arising out of the elements of location and association in each specific case . . . " Finally, Castán points out that the authors and decisions of the Supreme Court of Spain have accepted the foregoing ideas. See, among others, the Judgments of November 25, 1924, and of December 5, 1924, 164 *Jur. Civ.* 519 and 628 (1924).

sor of an animal, or on the one who uses the same, for the damages it may cause other persons. In principle, the basis of such liability rests on a presumption of fault for lack of vigilance. The person who has the legal possession of the animal or who uses it, is the only one who as a practical matter can take the necessary precautions to prevent any accident. Yet this liability exists even if the animal escapes or goes astray and it only ceases when the damage results from *force majeure* or from the fault of the victim. *Ferrer* v. *Rivera*, 56 P.R.R. 480 (1940). Therefore, this is not a mere procedural presumption of fault or negligence, but a special liability imposed by law which ". . . has affinity with or rather penetrates into the sphere of objective liability . . . " 4 Castán, *op. cit.* 834–835. Aside from the fact that it is not necessary to impute in the pleadings any kind of fault or negligence to the possessor of the animal or to the person who uses the same, he is relieved of liability only if there exists one of the two exceptions pointed out, which must be proved by the person alleging them in his defense. See Judgments of the Supreme Court of Spain of October 19, 1909 (116 *Jur. Civ.* 120) and of December 23, 1952 (40 *Jur. Civ.* 2d 1066).

 Liability is not limited, however, to wild or dangerous animals, but includes all animals without distinction. Nor is it limited to a dangerous conduct or activity on account of the use made of the animal. On the other hand, the alleged ground of *force majeure* exists (1) where the animal has been stolen and (2) where an employee of the owner uses it for purposes which are not within the scope of his employment. *Colón* v. *Pérez*, 27 P.R.R. 685 (1919).[3] Thus, in our opinion, a strictly *"objective"* theory is unacceptable to explain the liability established by the

---

[3] Of course, in those cases the possessor could be liable for the damages under § 1802 through fault or negligence *in vigilando* or *in eligendo:* for example, if he entrusts the animal to a careless employee, or if for any other reason he could have foreseen or prevented the accident.

afore-cited § 1805, since it is not based exclusively on the social need to compensate for the damages suffered as a result of the risks inherent in a conduct or activity which, though dangerous, is nevertheless permitted.[4] The rational basis of § 1805 is a presumption of liability arising from the right of the possessor or of the person who uses the animal to supervise and control it, and from the correlative duty of exercising such right with due precaution to prevent the infliction of damage on another. 12 Manresa, *Código Civil Español*, 673–686 (5th ed. 1951) ; 6 Planiol y Ripert, *Tratado Práctico de Derecho Civil Francés*, 819–830 (Sp. trans.) ; 3 Colin y Capitant, *Curso Elemental de Derecho Civil*, 869–873 (3d ed. Sp. trans. 1951).[5]

▆▆▆▆ In practice it is usually easy to determine on whom such liability is imposed. The owner generally has the legal possession and as a rule he is also the one who uses the animal. *Reddinger v. Crespo*, 18 P.R.R. 106 (1912) ; *Torres v. Dávila*, 47 P.R.R. 298 (1934) ; *Ferrer v. Rivera*, 56 P.R.R. 504 (1940) ; *Galarza v. G. Llinás & Co.*, 71 P.R.R. 103 (1950). The liability of the owner continues (1) even if he has surrendered the physical custody of the animal to an employee, and (2) even if he makes use of the animal through an employee. *De Jesús v. Arzuaga*, 53 P.R.R. 497 (1938); Puig Peña, *op. cit.* 581.

[4] But see Puig Brutau, *Fundamentos de Derecho Civil*, 671–681, 693–695, Tome II, Vol. 2 (1950); Puig Peña, *Tratado de Derecho Civil Español*, 580–581, Tome IV, Vol. 2 (1951). The strict liability theory is more in harmony with the rules prevailing in the Anglo-American law. See Prosser, *Handbook of the Law of Torts*, 315–349 (2d ed., 1955); 2 Harper and James, *The Law of Torts*, 785–870 (1956). *Cf.* Pound, *An Introduction to the Philosophy of Law*, 72–106 (Rev. ed., 1954), and Seavey, *Principles of Torts*, 56 Harv. L. Rev. 72 (1942).

[5] See also: Colombo, *Culpa Aquiliana*, 512–528 (1944); 2 Mazeaud y Mazeaud, *Traité Theorique et Pratique de la Responsabil'té Civile*, 46–88 (4th ed., 1949); 1 Savatier, *Traité de la Responsabilité Civile*, 511–523 (2d ed., 1951); Lawson, *Negligence in the Civil Law*, 36–50 (1950); 6 Planiol y Ripert, *Traité Pratique de Droit Civil Francais*, 833–922 (2d ed., 1951); 2 Mazeaud, *Lecons de Droit Civil*, 441–507 (1956); 2 Ripert y Boulanger, *Traité Elementaire de Droit Civil de Planiol*, 310–317, 359–376 (2d ed., 1947).

However, the owner may actually deliver the animal to be used by another person: through lease, loan, contract of *aparcería*, etc. In such case, it is the lessee, the borrower, or the party working on shares who, as a rule, possesses and uses the animal. Therefore, even if he continues to receive a financial profit from the animal, the owner may not be held liable under § 1805. He could only be held liable if his fault or negligence is established, as provided by § 1802 of the Civil Code (1930 ed.). See 12 Manresa, *Código Civil Español*, 673 *et seq.* (5th ed., 1951) ; *Borrell Maciá, Responsabilidades Derivadas de Culpa Extracontractual Civil*, 203–212 (1942) ; 6 Planiol y Ripert, *Tratado Práctico de Derecho Civil Francés*, 819–830 (Sp. trans.) ; Colombo, *op. cit.* 514–515; 2 Mazeaud y Mazeaud, *op. cit.*, 46–88.

 This solution conforms with the literal language of § 1805 and with the underlying thought that the basis of liability for the damages caused by an animal rests on the duty of care and of supervision rather than on the fact that profit is obtained from it. Obviously, under § 1805, it is not necessary to prove that the defendant is the owner of the animal which caused the damages if he had it in his possession (*Vélez v. Orozco*, 59 P.R.R. 519) or if he used it (*Ruiz v. Solís*, 61 P.R.R. 787). On the other hand, it must be borne in mind that the liability of the possessor and of the person who uses the animal do not accumulate—they are separate and alternative. Puig Peña, *op. cit.*, 581; 6 Planiol y Ripert, *op. cit.*, 820–21. The possessor (under any title) may not have the animal under his custody at the time of the accident because another person is using the same. Under such hypothesis, pursuant to § 1805, the only person liable is the one using the animal, although the victim could then prove that the possessor was guilty of the fault that caused the damage, basing his action on § 1802: for example, that he delivered an animal known to be vicious without a warning that it was necessary to take special care to prevent damage to third persons. See 2 Mazeaud y Mazeaud,

*op. cit.*, 50–51; Colombo, *op. cit.*, 515. These rules agree with the wording of § 1805, which imposes the presumption of liability on "the possessor . . . , *or* the one who uses the same . . . ," and again with the essential notion that the basis of liability is the duty of care and vigilance of the animal, since the idea of benefit or profit would tend to favor joint liability.

The above is enough to establish that, under the attendant circumstances, the presumption of liability of § 1805 does not fall on the owner of the animal, who is the only defendant in this action. It might have been invoked only against the party working on shares, as he is the only person who at the time of the accident (1) possessed the animal, and (2) used the same. Consequently, it is not necessary to decide whether or not the damage resulted from the *fault* of the victim. But we should point out here that construing § 1385 of the French Civil Code [6] which corresponds to § 1805 of our Code, the legal doctrinal works and the case-law in France unanimously agree that the act of abnegation or sacrifice of a person who risks himself to save another from the injury which an animal may cause him does not constitute *fault* or *blame* if his intervention was the only apparent means of saving the other person from serious danger.[6a] Nor is he, who in such a way attempts to avoid

---

[6] Said section provides: "The owner of an animal, or the one who uses the same, while he uses it, is liable for the damages the animal may cause, whether it is under his custody or whether it should escape from him or stray." The exceptions of *force majeure* and of fault of the person who suffers the damage were added without hesitation by the courts and the textwriters. In that respect, see among others, Colin y Capitant, *op. cit.*, 869–873.

[6a] The principle to which we have referred is to a certain extent analogous to the one we have adopted from the common law, in applying in certain cases the formula that "danger invites rescue", to determine the causal relation between a negligent or wrongful act and the injury received by the person who tries to rescue another from the danger arising from said act. See *Arroyo v. Caldas*, 68 P.R.R. 639, 644 (1948); Prosser, *Handbook of the Law of Torts* 270–272 (2d ed., 1955), and cases

a serious risk provoked by an animal, guilty of fault merely because he enters another's property without permission. In other words, he can not be labeled a "trespasser" having no right to invoke the special liability imposed by law for the damages caused by animals. 2 Mazeaud y Mazeaud, *op. cit.*, 421–424; 1 Savatier, *op. cit.*, 127–129; Colombo, *Culpa Aquiliana*, 525–526 (1944). *Cf. Troche* v. *Matos*, 52 P.R.R. 271 (1937), and *Ferrer* v. *Rivera, supra*.[7] And to be exact, we must finally indicate that according to the evidence introduced the defendant owner herein was not guilty of fault or negligence of any kind, for which reason he is not liable pursuant to the provisions of § 1802.

For the foregoing reasons, the judgment will be affirmed.

Mr. Justice Marrero did not participate herein.

---

therein cited; 2 Harper & James, *The Law of Torts* 1167–1168 (1956). Of course, wanton conduct, that is to say, foolhardy and unreasonable, even taking into account the seriousness of the danger which the other person is exposed, might constitute fault or negligence pursuant to § 1805.

[7] The sugar cane farm where the cow was grazing on the day of the occurrence belonged to the father of the sharer and the evidence did not establish whether or not the child attacked by the animal had permission to enter such property. It was only proved that the minor in question had gone there to pick grass for some hogs and that for many years he had picked grass at that place. In any event, here the defendant could not have invoked the immunity recognized under certain circumstances to the possessor of property for damages of a "trespasser." Such immunity is not extended to third persons who are neither agents nor employees of the possessor nor work for him. Prosser, *Handbook of the Law of Torts*, 434–435 (2d ed. 1955), and cases therein cited; 2 Harper and James, *The Law of Torts*, 1433–1444 (1956).